# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 05 CR 879 |
| v. ) | Judge Blanche M. Manning |
| ) | |
| IMRE SZANTO ) | |

## MEMORANDUM AND ORDER

Defendant Imre Szanto had trouble finding work as a truck driver in Canada. As a result, he could not provide food and other necessities for his wife and young daughters. On October 24, 2005, he thought his luck had turned around. Two of his co-defendants in this case approached him with a job–driving a truckload of Viagra across the border to Chicago, for which they would pay him $3000. Unbeknownst to Szanto, the truck was actually filled with 20,000 pills containing the drug Ecstacy. Intercepted telephone calls about Szanto's trip had tipped off investigators, who were waiting in Chicago for his arrival. Szanto set out for Chicago that same day—October 24—and not surprisingly, he was arrested when he arrived at the designated drop-off location. Szanto never received the $3000, and his family has not seen him since.

After his arrest, Szanto and 14 co-defendants were charged with conspiracy with intent to distribute the drug Ecstacy. *See* 21 U.S.C. §§ 841(a)(1), 846. Szanto pleaded guilty and is before the court for sentencing.

The probation officer set forth her calculation of Szanto's sentencing range in her presentence investigation report. She calculated a base offense level of 30. *See* U.S.S.G. § 2D1.1(c)(4), (a)(3)(i). From that, two levels are deducted under the safety valve provision, *see* U.S.S.G. § 5C1.2, two levels are deducted based upon the parties' agreement in Szanto's plea that he was a minor participant, *see* U.S.S.G. § 3B1.2(b), and three levels are deducted for his

acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), (b). The resulting total offense level of 23, combined with a criminal history category of I (based upon zero criminal history points) results in a sentencing range of 46-57 months. The government agrees with the probation officer's calculation.

In his sentencing memorandum, Szanto's counsel argues that Szanto should be considered a minimal, rather than a minor, participant, and is therefore entitled to a four-level, rather than two-level, decrease. The court agrees. Although neither the defendant nor the government has submitted a version of the offense, in his sentencing memorandum and at sentencing, counsel stressed that Szanto did not know that the cargo he was transporting was Ecstacy—he thought it was Viagra. The government did not dispute counsel's assertion. If true, then Szanto had a "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others," the definition of a minimal participant under the Sentencing Guidelines. *See* U.S.S.G. § 3B1.2 comment. (n.4).

Szanto's lack of knowledge about the nature of the cargo he transported is also supported by the fact that, according to the plea agreement, Szanto was approached by the co-defendants on the same day that he actually transported the cargo to Chicago. The government has offered no allegation that Szanto knew or had any interaction with the co-defendants other than on that single day. According to Szanto, he was desperate to find work as a truck driver when the co-defendants approached him with a job that he thought involved nothing more than driving a shipment of Viagra to Chicago.

Although the parties agreed in Szanto's plea that he was entitled only to a minor participant reduction, they also agreed that the plea was not governed by Federal Rule of

Criminal Procedure 11(c)(1)(B), and that the validity of the plea agreement did not turn on the court's acceptance of the parties' anticipated guideline calculations. Accordingly, the court agrees with Szanto's counsel that the defendant was only a minimal participant who did not understand the true nature of the conspiracy to which he has pleaded guilty. Accordingly, in lieu of a two-level reduction under U.S.S.G. § 3B1.2(b), the court will apply a four-level reduction under U.S.S.G. § 3B1.2(a) based upon Szanto's minimal participation in the charged conspiracy. Szanto's adjusted offense level is therefore 21, which combined with a criminal history category of I results in a sentencing range of 37-46 months.

### *Sentencing Factors under 18 U.S.C. § 3553(a)*

Under 18 U.S.C. § 3553(a), the court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing, which are:

- (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
- (2) to create adequate deterrence to crimes by others;
- (3) to protect the public from future crimes by the defendant; and
- (4) to provide the defendant with necessary treatment and training.

*See* 18 U.S.C. § 3553(a)(2). To those ends, the court must take into account the following factors:

- (1) the nature and circumstances of the offense;
- (2) the history and characteristics of the defendant;
- (3) the kinds of sentences available;
- (4) the sentencing range calculated under the Sentencing Guidelines;

(5) pertinent policy statements set forth in the Sentencing Guidelines;

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records or who committed similar crimes; and

(7) the need to provide restitution to victims of the defendant's offense.

*See* 18 U.S.C. § 3553(a)(1-7).

With those factors in mind, the court will consider Szanto's arguments in favor of a sentence below his guideline range—specifically, a sentence of time-served (approximately 24 months).

### 1. Nature of the Offense

Drugs are the scourge of society, and Szanto played an integral role in transporting an enormous quantity of the drug Ecstacy into the country. Had he not been caught, the drugs he transported would no doubt have hit the streets of Chicago and endangered the lives of its citizens. The serious nature of Szanto's offense therefore favors a very serious sentence. However, the court is not free to sentence Szanto based upon the nature of his offense alone, but rather must balance this factor against the others set forth in § 3553(a). Therefore, the court must analyze Szanto's other arguments in favor of a sentence below his Guidelines range.

### 2. History and Characteristics of Defendant

As Szanto set out in his sentencing memorandum, at the time of the offense he was not working. He had studied engineering in college in Hungary, but he could not find work there because his father had spoken out against the communist party. So he emigrated to Canada and attempted to work as an automobile mechanic, but had trouble finding work because he did not speak English. He also had trouble finding legitimate work as a truck driver and, because of the

financial strain on his wife and two young daughters, accepted work from the co-defendants. Therefore his participation in the instant offense was driven, at least in part, by the need to provide for his family. The court also notes that the instant offense was an aberration in Szanto's otherwise crime-free life.

Although his sentencing memorandum and letter to the court offered insight into his history and characteristics, the court was even more struck by Szanto's demeanor in court. Rarely has the court observed a criminal defendant appear so contrite and remorseful. Szanto acknowledged the wrongfulness of his conduct, and recognized that it adversely impacted not only his family but also the citizens of this district on whom the scourge of drugs exacts a heart-wrenching toll. The court found Szanto to be sincere.

The court was also struck by the work Szanto has accomplished while in pretrial detention. As will be discussed in greater detail below, Szanto has served nearly two years in pretrial detention at the state facility in Kankakee which, by all accounts, is far and away the most substandard facility in the area in which the Bureau of Prisons contracts to house its population. Yet despite those conditions, Szanto mastered the English language and has become an accomplished artist. He has also used the time to reflect on hardships he has caused others. In the court's view, based upon its observation of Szanto at sentencing, the court believes that Szanto has been rehabilitated.

### 3. Need to Protect the Public from More Crimes by the Defendant

Szanto is unlikely to commit more crimes because, as noted above, he was almost 48 when he committed his first crime. He is now almost 50, an age at which the likelihood of recidivism has diminished. *See United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006) (citing studies that examined relationship between age and recidivism). His offense was driven by his financial difficulties at the time, but because Szanto learned English while in pretrial detention, he will be more employable upon release and have less financial incentive to drive him to crime.

### 4. Status as a Deportable Alien

Szanto is a citizen of Canada, and presumably will be deported there upon completion of his sentence. Counsel argues that this factor favors a lower sentence for two reasons. First, he argues that Szanto's conditions of confinement will be harsher than the conditions of citizens because he will not be entitled to participate in early release and community confinement programs and will be subject to a more restrictive status of confinement within the Bureau of Prisons. Second, he argues that Szanto is entitled to a lower sentence because Szanto will consent to deportation upon completion of his term of incarceration.

The Seventh Circuit permits downward departures based upon a defendant's status as a deportable alien in limited circumstances. A departure is not permitted based upon the denial of sentence modifications afforded citizens in an effort to help them reintegrate into American society. Therefore, aliens are not entitled to a downward departure just because they are ineligible for drug treatment, or to spend the latter part of their sentence in a halfway house. *See United States v. Mesa-Urtado*, 351 F.3d 301, 305 (7th Cir. 2003). However, in those limited

"exceptional circumstances" where confinement conditions for a deportable alien are "substantially more onerous than the framers of the guidelines contemplated," a downward departure is authorized at the district court's discretion. *Id.* (internal quotations and citation omitted). Applying that reasoning, a district court granted a one-level reduction to an alien set to be deported to Mexico, separating him his entire family who now lived in the United States. *See United States v. Ferreria*, 239 F.3d 849, 857 (E.D. Wis. 2002) ("By losing his family defendant will suffer a severe punishment."). Likewise, in *United States v. Arowosaye*, No. 02-4322, 2004 WL 2278735, at *1 (7th Cir. Oct. 5, 2004), a defendant faced deportation to Nigeria after serving time for a drug offense. According to the defendant, he faced additional time once returned to Nigeria because it is a crime under Nigerian law to be convicted abroad on drug charges. *Id.* Although the Seventh Circuit noted that it "is not a forbidden ground of departure," it also affirmed the district court's decision not to exercise its discretion to depart because, according to the district court, whether the defendant would actually serve additional time in Nigeria was speculative. *Id.* at *3.

Szanto has not identified any exceptional circumstance that he will suffer as a result of his status as a deportable alien. Therefore, the "exceptional circumstance" component does not favor a lower sentence. As for his argument that he should get a lower sentence based upon his agreement to consent to deportation, Szanto has not identified any non-frivolous, colorable defense to deportation so that his consent would result in any tangible administrative benefit for the government. Therefore, he has not demonstrated a basis for a lower sentence on the "consent to deportation" component either.

5.    **Conditions of Pretrial Confinement**

Szanto contends that he is entitled to a lower sentence based upon the conditions of his pretrial confinement, including the conditions at the state facility in Kankakee where access to medical care, outdoor recreation, and visitors is limited. The Seventh Circuit has never definitively determined whether conditions of pretrial confinement may be taken into account when crafting an appropriate sentence. *See United States v. Cardenas*, No. 02-3566, 2003 WL 21461824, at *1 (7th Cir. June 18, 2003) ("This circuit has not yet decided whether conditions of pretrial confinement can even be an acceptable basis for a downward departure.") However, even if pretrial conditions are a basis for imposing a lower sentence, the facts of this case do not warrant a lower sentence on that basis. This court has so far not taken into account the conditions at Kankakee when determining an appropriate sentence, and the conditions that Szanto has described are no worse than the conditions other defendants have described.

## CONCLUSION

The court has carefully reviewed the parties' submissions, the letter from Szanto's wife, the information contained in the presentence report, and Szanto's statements to the court and his demeanor while making those statements. With all of that in mind as well as the factors set forth in § 3553(a), the court determined a sentence that was sufficient, but not greater than necessary, to comply with the purposes of sentencing. Based upon Szanto's (1) minimal role in the offense, (2) his work while in pretrial confinement to learn English so that he can have a better chance to obtain work and provide for his family, (3) his age, which makes him less likely to commit any more crimes, (4) the aberrant nature of his offense, and (5) his demeanor in court which led the

court to believe that Szanto is remorseful and has already been rehabilitated, the court, in its discretion, believes that the appropriate sentence is one of time-served, or just under 24 months.

ENTER:

DATE: November 8, 2007

_____
Blanche M. Manning
United States District Judge